UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHERYL A. VARA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:05-cv-0551-DFH-VSS |
| | ) |
| MENARD, INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION TO DISMISS
AND COMPEL ARBITRATION

Plaintiff Cheryl A. Vara lost her job as Front End Manager at a retail store owned and operated by defendant Menard, Inc. Vara claims that Menard violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") by denying her request for family medical leave and terminating her in retaliation for requesting such leave.[1] She also alleges state law claims of wrongful discharge, defamation, and blacklisting. This court has original subject matter jurisdiction over Vara's FMLA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

---

[1]Vara's response in opposition to Menard's motion to dismiss and compel arbitration also states that Vara has alleged a federal claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2. Docket No. 20 at 1. Vara's complaint makes no mention of any claim under Title VII.

During the course of Vara's employment, she and Menard executed two written employment agreements. Each contained a clause requiring arbitration of disputes between the parties. The latter agreement expired on December 31, 2003. Vara's claims are based on events occurring in March and April 2004. Menard has filed a motion to dismiss and to compel arbitration, asserting that the employment agreements require Vara to arbitrate her claims.

Legally sophisticated employers do not often argue that courts should excuse them from the unambiguous terms of written employment contracts that the employers have written themselves, but this is such a case. The relevant arbitration provision expired long before the plaintiff's claims arose. Menard's arguments to the contrary are meritless. Menard's motion to dismiss and to compel arbitration is denied.

*The Applicable Legal Standard*

Menard's motion to dismiss plaintiff's claims and to compel arbitration arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* The motion arises in the situation governed by Section 3 of the FAA, a suit brought in federal court upon a potentially arbitrable issue. 9 U.S.C. § 3. The motion seeks to compel arbitration, which is the relief provided by Section 4 of the Act:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . in a civil action . . . for an order

directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The Federal Rules of Civil Procedure govern proceedings under the FAA only to the extent not provided for in the FAA itself. Fed. R. Civ. P. 81(a)(3). Section 6 of the FAA provides: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Accordingly, this court reviews the parties' motion papers under the relevant portions of the FAA, applying the Federal Rules of Civil Procedure as a supplement where the FAA is silent. See *Health Services Mgmt. Corp. v. Hughes*, 975 F. 2d 1253, 1258 (7th Cir. 1992) ("Thus, the language of Section 6 preempts the applicability of the Federal Rules . . . .").

*Facts*

The following facts are undisputed, at least for the purposes of Menard's motion. Vara began working for Menard as a cashier in 1994. In 1999, Vara and a representative of Menard signed an Employee Agreement (the 1999 Agreement) containing the following provision:

> 7. Remedy. I agree that all problems, claims and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to

-3-

> resolve the dispute by these means, I agree to submit to final and binding arbitration. . . . Problems, claims or disputes subject to binding arbitration include, but are not limited to:  Statutory claims arising under the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act and Non-Statutory claims such as contractual claims, quasi-contractual claims, tort claims and any and all causes of action arising under state laws or common law.

Brown Dec. Ex. 1.  The 1999 Agreement also stated separately that it contained "a binding arbitration provision which may be enforced by the parties," and it did not designate a date of termination of the agreement's terms.  *Id.*

In 2003 Vara was promoted to the position of Front End Manager.  She and Menard then signed a new Employment Agreement (the 2003 Agreement).  Brown Dec. Ex. 2; Pl. Ex. A.  Menard claims, and Vara does not dispute, that the 2003 Agreement was signed in Indiana.  Def. Br. at 3.  The 2003 agreement provided that Vara "agree[d] to work for Menards during fiscal year 2003 (January - December)" under the conditions listed in the agreement.  Pl. Ex. A at 1.

Paragraph seventeen of the 2003 Agreement also included an arbitration clause:

> In consideration of employment, or continued employment, or a promotion and the compensation . . . Menards and Front End Manager agree that all claims and disputes between them, including but not limited to:
>
> Statutory claims arising under the

*   *   *

-     Family Medical Act, and

                 \*     \*     \*

Non-Statutory claims

                 \*     \*     \*

-     tort claims and
-     any and all causes of action arising under state laws or common law shall be resolved by binding arbitration by the American Arbitration Association . . .

*Id.* at 5.[2]  The 2003 Agreement also stated that Vara's employment could be "terminated at any time for any or no reason" by either of the parties.  *Id.* at 6.

In addition to the language in the opening paragraph of the 2003 Agreement stating that Vara agreed to work under the listed conditions between January and December 2003, the agreement limited its term in two other provisions. Paragraph twenty stated:

> The effective date of this Employment Agreement will be from the date written below to the end of the current fiscal year, transfer to another position, or termination which ever comes first.

*Id.* at 6.  Below the signatures of the parties, the 2003 Agreement listed the "EFFECTIVE DATE" as January 1, 2003, and the "TERM" as December 31, 2003. *Id.* at 7.

Only one provision of the 2003 Agreement expressly extended the parties' obligations beyond the end of the 2003 calendar year.  Paragraph twelve

---

[2]The parties have not indicated that the phrase "Family Medical Act" was meant to signify anything other than the Family and Medical Leave Act.

prohibited Vara from disclosing confidential information about Menard and from competing with Menard within a 25-mile radius of the store where she worked. Paragraph twelve twice stated that its obligations applied to Vara both during the term of her employment and for the two years following the termination of her employment.  Pl. Ex. A at 3.  The provision repeated the extension a third time, stating that the "agreement of non-disclosing and non-competing will survive the termination of this Agreement."  *Id.*

Paragraph twenty-one of the 2003 Agreement stated that the agreement's written terms "constitute the entire agreement, either oral or written" between the parties "and supersede all prior agreements" between them.  *Id.* at 6.

Menard terminated Vara's employment on April 15, 2004.  On April 15, 2005, Vara filed a complaint for damages and a demand for a jury trial against Menard in this court.  The complaint alleges claims under the Family and Medical Leave Act, as well as state law claims.  All claims are based on events occurring on and after March 26, 2004.[3]

---

[3]Several of Menard's arguments are simply frivolous, a term the court does not use lightly.  Most troubling is the fact that the statement of facts in Menard's opening brief did not mention the expiration terms of the 2003 Agreement or the provision of the 2003 Agreement superseding the 1999 Agreement.  Menard also omitted from its submission to the court the portion of the 2003 Agreement with the express provisions extending the confidentiality and non-competition provisions beyond the termination.  The argument section of the opening brief hinted only obliquely at the expiration issue, at pages 6 and 7, rebutting only an anticipated straw-man argument to the effect that post-expiration arbitration should not be available even for claims arising under the agreement.

*Discussion*

Employers and employees may agree by contract to submit their disputes, including federal statutory claims, to arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33-35 (1991); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). The issue here is whether Vara's claims, which arose in 2004, must be arbitrated under either the expired 2003 Agreement or the superseded 1999 Agreement. The plain language of the agreements shows that the parties did not agree to arbitrate claims or disputes based on events occurring after the termination of both agreements, apart from violations of the confidentiality and non-competition covenants, which are not at issue here.

I.      *The 2003 Agreement*

    A.      *Federal Law and Policy*

The Federal Arbitration Act requires a court to grant a motion to compel arbitration where the court finds: (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement," and (3) "a refusal to arbitrate." *Zurich American Insurance Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The 2003 Agreement's arbitration clause was apparently valid and provided for arbitration of all claims filed under the Family and Medical Leave Act, as well as "any and all causes of action arising under state laws or common law," the kinds of claims at issue in Vara's complaint. If Vara were

asserting claims that arose during the term of the 2003 Agreement, Menard would be entitled to arbitration.

The written 2003 Agreement expired on December 31, 2003.  All of the events alleged in Vara's complaint occurred on or after March 26, 2004, months after the 2003 Agreement expired by its terms.  The issue is whether the parties intended the scope of the arbitration provision to include claims unrelated to the contract and based on events occurring outside of its clearly defined term.

"[F]ederal policy under the FAA favors the enforcement of valid arbitration agreements," but "a party can be forced into arbitration only if she has in fact entered a valid, enforceable contract waiving her right to a judicial forum." *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001). Because "arbitration is a matter of contract," parties may be compelled to submit to arbitration only those disputes that they have agreed to submit.  *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986), quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); see also *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 929 (7th Cir. 2003) ("Although the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration.").

As a general rule, and in the absence of contrary language in a contract, courts can presume that parties who have agreed to arbitration have also agreed that disputes arising under the contract could be arbitrated even after the contract's term has expired. See, *e.g., Nolde Brothers, Inc. v. Local Number 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 251-53 (1977) (explaining that "it could not seriously be contended" that expiration of contract would terminate contractual obligation to arbitrate where dispute arose during term of contract). This general rule does not extend, however, to a presumption that once two parties have agreed to arbitrate disputes under one contract, they intend to arbitrate any future disputes between them that arise after that contract expires.

This case is governed by the reasoning of the Supreme Court's decision in *Litton Financial Printing Division, Inc. v. NLRB*, 501 U.S. 190 (1991). In *Litton Financial Printing*, a collective bargaining agreement expired and was not replaced by a new agreement. Ten months after the expiration, the employer laid off ten of the forty-two employees in the printing plant when it closed a particular operation. Six of the ten laid-off employees were among the most senior in the plant. The union and the employees filed grievances and sought arbitration of their claims that the lay-offs were contrary to the seniority provisions of the expired collective bargaining agreement. *Id.* at 194. The Supreme Court held that the claims were not arbitrable under the contract. The Court explained: "The object of an arbitration clause is to implement a contract, not transcend it." *Id.* at 205. According to the Court:

> *Nolde Brothers* does not announce a rule that postexpiration grievances concerning the terms and conditions of employment remain arbitrable. . . . A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205-06.  The Court went on to explain:

> Any other reading of *Nolde Brothers* seems to assume that postexpiration terms and conditions of employment which coincide with the contractual terms can be said to arise under an expired contract, merely because the contract would have applied to those matters had it not expired.  But that interpretation fails to recognize that an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.

*Id.* at 206.

*Litton Financial Printing* shows that a presumption of arbitrability applies only to post-expiration disputes (a) that allege a breach of the expired agreement itself, or (b) that are based on actions taking place during the contract term, or where (c) the contract by its terms provides for such arbitration.  The claims in Vara's complaint do not fit any of these descriptions.  She does not allege a breach of contract, and her claims are not based on any acts occurring during the contract term.  The language of the 2003 Agreement does not show an intent to subject post-expiration claims to post-expiration arbitration.  Accordingly, under *Litton Financial Printing,* Menard is not entitled to force Vara to arbitrate claims

that do not allege a breach of the contract and did not even arise until months after the contract had expired.

Menard's reliance on *Sweet Dreams Unlimited Inc. v. Dial-A-Mattress International*, 1 F.3d 639 (7th Cir. 1993), is inapposite. In that case the parties' trademark license included a provision stating that "[a]ny disputes arising out of the agreement" would be submitted to arbitration. *Id.* at 641. Sweet Dreams filed a complaint alleging four counts against Dial-A-Mattress, including a claim for rescission of the contract, two claims for fraudulent inducement to continue the performance designated in the contract, and a claim for interference with the plaintiff's business relationships during and after the four month term of the contract. The Seventh Circuit reversed the district court's denial of the motion to compel arbitration where Sweet Dreams' claims "had their genesis in the [a]greement" in that they were based on events that either took place during the agreement or "were started pursuant to the [a]greement." *Id.* at 643. Interpreting the Supreme Court's holding in *Nolde Brothers*, the Seventh Circuit noted: "If the parties had wished to limit the duty to arbitrate to the term of the Agreement itself they could have said so explicitly," and held that the agreement showed an intent to "commit to arbitration any dispute connected with the contract," regardless of when it occurred. *Id.*

The principal difference between this case and *Sweet Dreams* is that Vara's claims did not arise under the parties' written contract. Rather, Vara's claims

arise under the statutes and common law governing her at-will employment that continued after expiration of the written contract.  Because each of the claims at issue in *Sweet Dreams* arose from the parties' contract, the court did not address and did not need to address the warning in *Litton Financial Printing* against applying arbitration clauses to disputes over "postexpiration terms and conditions of employment . . . merely because the contract would have applied to those matters had it not expired."  501 U.S. at 206.  Precisely that teaching in *Litton Financial Printing* controls the arbitration issue now before this court.  See also *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 651 (7th Cir. 2003) ("[T]he fact that *some* post expiration grievances remain subject to arbitration does not mean that *all* such grievances are arbitrable.").

B.     *Indiana Law*

State law governing contracts controls the determination of whether parties have agreed to submit a matter to arbitration.  *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997).  The contracts at issue were signed in Indiana and all other relevant conduct occurred in the state.  Under Indiana law, a party moving to compel arbitration carries the burden of demonstrating an enforceable arbitration agreement.  *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind. App. 2004); *Showboat Marina Casino Partnership v. Tonn & Blank Construction*, 790 N.E.2d 595, 597-98 (Ind. App. 2003); *Gibson*, 121 F.3d at 1130.  Mirroring

the federal law already discussed, Indiana law respects "a strong policy in favor of enforcement of arbitration agreements," but also recognizes that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so." *Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. App. 1999).

Menard relies on *Chesterfield Management, Inc. v. Cook*, 655 N.E.2d 98 (Ind. App. 1995), in which a lease contained an arbitration clause providing: "Any dispute under any of the paragraphs of this Lease shall be settled by arbitration." *Id.* at 102. The landlord contended that the tenants had breached the lease by leaving the premises in a damaged condition at the end of the lease term. The tenants tried to avoid arbitration by arguing that the claim for breach of the lease arose after the lease had terminated. Because the claim arose under the provisions of the lease itself, however, the court held that arbitration was required. *Id.*

Vara's claims, by contrast, did not arise during the term of the 2003 Agreement, and she has not alleged a breach of the 2003 Agreement. *Chesterfield Management* demonstrates the common-place rule that claims for breach of a contract may be subject to post-expiration arbitration. The decision does not require parties to arbitrate matters unrelated to the expired contract. The remaining cases cited by Menard suffer the same defect as applied to Vara's claims. See *DeHaan*, 713 N.E.2d at 309 (affirming order of arbitration on claim

for breach of two-year warranty where claim arose during two year period, even where arbitration was demanded after expiration of two year period); *Polinsky*, 803 N.E.2d at 688-89 (reversing denial of motion to compel arbitration; compelling arbitration of post-expiration claim for breach of fiduciary duty where claim was predicated on action for breach of contract).[4]

To determine whether the parties, at the time of agreement, intended to arbitrate matters arising after expiration of the contract, the court must examine the language the parties used to describe their rights and obligations. *DeHaan*, 713 N.E.2d at 307; *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind. App. 2001). In doing so, the court analyzes the agreement to arbitrate

---

[4]Additionally, the cases cited by Menard from other jurisdictions all compelled arbitration of claims arising under the contract in dispute, including claims alleging that termination of the contract in question was a breach. See *R.P.T. of Aspen, Inc. v. Innovative Communications, Inc.*, 917 P.2d 340, 342 (Colo. App. 1996) (compelling arbitration of claim that termination breached the contract); *Best Financial Corp. v. Frankenmuth Mutual Ins. Co.*, 1999 WL 33453830, *1-2 (Mich. App. 1999) (compelling arbitration of claim that arose under contract); *Smith Barney, Inc. v. Henry*, 775 So.2d 722, 726-27 (Miss. 2001) (compelling arbitration of claims for improper termination of contract); *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 626-27 (N.Y. 1997) (compelling arbitration of claims that arose under two contracts between the parties and were based on acts that occurred during the contracts' terms); *Jackson Mills, Inc. v. BT Capital Corp.*, 440 S.E.2d 877, 879 (S.C. 1994) (compelling arbitration of dispute as to whether contract had been terminated); *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App. 2000) (compelling arbitration of claims that arose under contract for legal services); *State ex rel. Ranger Fuel Corp. v. Lilly*, 267 S.E.2d 435 (W. Va. App. 1980) (compelling arbitration of claim for breach of lease). Similarly, in *Shehorn v. Daiwa Bank, Ltd.*, 1996 WL 312092 (N.D. Ill. 1996), the court ordered arbitration of a claim for severance pay that arose under the contract in question. None of these cases support Menard's theory that it can force arbitration of claims that arose after the relevant contract had expired by its own terms and that did not arise under that contract.

as any other contract, and must apply ordinary principles of contract interpretation under state law.  *Gibson*, 121 F.3d at 1130; *Polinski*, 803 N.E.2d at 687; *Showboat Marina*, 790 N.E.2d at 598.

To determine the parties' intent, the entire contract must be read as a whole and given meaning where possible.  "Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone."  *Showboat Marina*, 790 N.E.2d at 597; *MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 908 (Ind. 2004).  "The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting."  *Abbey Villas Development Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 100 (Ind. App. 1999).  Unambiguous contract language binds the parties and the courts, and where the language of an instrument is unambiguous, the parties' intent is ascertained from within the "four corners" of the contract.  *Id.* at 99-100; see generally *DeHaan*, 713 N.E.2d at 308-09.

Indiana law favors enforcement of valid arbitration agreements, so that the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used."  *Mislenkov*, 743 N.E.2d at 289, citing *St. John Sanitary District v. Town of Shererville*, 621 N.E.2d 1160, 1162 (Ind. App. 1993).  However, this principle serves only to carry out the intent of the parties: "parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate," and therefore "arbitration agreements will not be extended by

construction or implication." *Showboat Marina*, 790 N.E.2d at 598; *Mislenkov*, 743 N.E.2d at 289.

The 2003 Agreement provided that Menard agreed to employ Cheryl Vara as Front End Manager during the calendar year 2003. The contract provided, nevertheless, for employment at will and stated that it would terminate no later than the end of 2003. Where Menard intended for contractual obligations to continue past the termination – in the non-competition and confidentiality clauses of paragraph twelve – it drafted language to accomplish that purpose quite explicitly. The silence of the arbitration clause as to its duration, especially when contrasted with the express limitation of the contract as a whole and express extension of other parts of the agreement, unambiguously demonstrates that the parties intended to be bound by the arbitration clause only as to claims arising during the term of the contract.

II.    *Estoppel*

Menard next argues that Vara may not contest the application of the arbitration clause in the 2003 Agreement to her post-expiration claims because such would undermine "equitable principles underlying Indiana contract law." Def. Reply Br. at 8. This argument is frivolous. In support of its position, Menard cites several cases holding that a claimant may not both contest the validity of an agreement and claim benefit under its provisions. See, *e.g.*, *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind. 1983) (holding defendant could

not repudiate validity of contract under which he received benefit); *Norlund v.
Faust,* 675 N.E.2d 1142, 1150-01 (Ind. App. 1997) (precluding defendant from
repudiating for illegality the validity of contract where he entered the agreement
knowing that it contravened state statute); *Anderson v. Indianapolis Indiana
AAMCO Dealers Advertising Pool,* 678 N.E.2d 832, 836 (Ind. App. 1997) (explaining
that defendants could not repudiate validity of contract under which they gained
benefits for over eight years); *In re Marriage of Arvin,* 689 N.E.2d 1270, 1273 (Ind.
App. 1997) (ruling that mother could not void unenforceable child custody and
support agreement where she continued to enjoy the benefit of primary physical
custody under its terms).  Vara does not assert rights under the 2003 Agreement,
nor does she contest its validity.  She argues only that (1) the arbitration clause
is limited to the term specifically and repeatedly provided by the agreement; (2) the
contract term expired; and (3) the claims asserted in her complaint arose after the
contract expired by its own terms.  Menard's estoppel argument is meritless.

III.    *Modification*

Menard argues next that the parties modified the term of the contract with
their conduct by continuing the employment relationship past the end of 2003.
The parties' actions are perfectly consistent with the intention to allow the
previous contract to expire and continuing Vara's employment under an at-will
employment relationship.  Menard does not assert that Vara agreed to an oral
modification or that she intended to modify the specifically enumerated terms of

the contract by continuing her employment with Menard.  The conduct of the parties does not show any intent to modify the term of their written agreement.

IV.     *The 1999 Agreement*

Finally, Menard argues that Vara is bound to arbitrate by a previous agreement between the parties.  Vara's 1999 Agreement also contained a provision requiring Vara to submit "all problems, claims, and disputes experienced within [her] work area" to "final and binding arbitration."  Brown Dec. Ex. 1.  This argument is also frivolous.

Paragraph twenty-one of the 2003 Agreement contained an integration clause which stated:

> The provisions contained herein, or incorporated herein by specific reference, constitute the entire agreement, either oral or written, between Menards and [Vara], and supersede all prior agreements of the parties.  No representative, agent, or team member of Menard, Inc., other than the President has any authority, apparent or otherwise, to modify the terms of this Agreement.

Pl. Ex. A at 6.

Despite the clear language stating that all prior agreements were superseded by the 2003 Agreement, Menard argues that the arbitration provision of the 1999 Agreement requires Vara to submit her 2004 claims to arbitration. Menard supports this argument only with *SSD Control Technology v. Breakthrough*

*Technologies, Inc.*, 685 N.E.2d 1136 (Ind. App. 1997), a case that has nothing to do with this issue.  In *SSD Control Technology*, the Indiana Court of Appeals affirmed a circuit court's denial of a motion to transfer venue.  The parties had entered into two contracts.  The first contract provided a choice of forum provision.  The second contract stated that it "contain[ed] the entire agreement of the parties" and that it "supersede[d] any prior written or oral agreements between the parties," but did not contain the choice of forum provision provided in the first contract.  *Id.* at 1138.  After signing the second contract, one of the parties sued the other for breach of the first contract and sought to enforce the original forum provision.  *Id.* at 1137.

Examining whether the integration clause in the second contract precluded such a suit, the court agreed with the trial court's assessment that the subsequent language did not explicitly waive "claims already in existence" under the first contract.  As a result, the court allowed plaintiff's claim for breach of the first contract to proceed in accordance with its forum provision.  *Id.* at 1138.

*SSD Control Technology* holds at most that accrued *claims for breach* of a prior agreement are not extinguished by language in a subsequent agreement purporting to "supersede all prior agreements."  Under that reasoning, perhaps Menard could compel arbitration of claims that arose under the 1999 Agreement, even after execution of the 2003 Agreement.  But extending that reasoning to this

case would make it virtually impossible to supersede the terms of any existing

contract.

*Conclusion*

Menard has failed to demonstrate that the parties have agreed to arbitrate

Vara's claims.  Menard's motion to dismiss and compel arbitration (Docket No. 11)

is hereby denied.

So ordered.

Date: October 28, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Terry W. Dawson
BARNES & THORNBURG LLP
terry.dawson@btlaw.com

John T L Koenig
BARNES & THORNBURG LLP
jkoenig@btlaw.com

Cathleen L. Nevin
KATZ & KORIN
cnevin@katzkorin.com